Terri L. HASTINGS and Juana Serda, Plaintiffs,

v.

Joseph HANCOCK, Eugene Morrison, d/b/a Superior School of Hairstyling, and Ruby Morrison, d/b/a Superior School of Hairstyling, Defendants.

Civ. A. No. 92–2321–GTV.

United States District Court, D. Kansas.

Dec. 10, 1993.

David W. White, Marcia L. Montgomery, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Overland Park, KS, for Terri L. Hastings, plaintiff, Juana Serda.

**1316**

Carl E. Cornwell, Cornwell & Edmonds, Overland Park, KS, for Joseph Hancock.

James C. Morrow, Myerson, Monsees & Morrow, Kansas City, MO, for Eugene and Ruby Morrison.

### MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This case comes before the court on the Motion for Summary Judgment (Doc. 32) filed by Defendants Eugene and Ruby Morrison. Plaintiff has responded and opposes the motion. For the reasons stated in this memorandum and order, the motion is denied.

This case concerns alleged violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* Specifically, plaintiff alleges that she was subjected to numerous incidents of sexual harassment by defendant Joseph Hancock during her enrollment at the Superior School of Hairstyling from January to June, 1992. Plaintiff's claims encompass both recognized types of sexual harassment: hostile environment and *quid pro quo. See Hirschfeld v. New Mexico Corrections Dept.,* 916 F.2d 572, 575 (10th Cir.1990). Plaintiff has also asserted a pendant state law claim for emotional distress.

Because the Morrisons were the owners of the school, plaintiff contends they are proper defendants in this action. In their motion, however, defendants contend that they are not liable for any alleged violation of Title IX by separate defendant Joseph Hancock because they were not involved with the Superior school during the time of the alleged harassment, and because defendant Hancock was not their agent.

### I. SUMMARY JUDGMENT STANDARDS

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 13396 (10th Cir. 1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only be a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

### II. FACTUAL BACKGROUND

The pertinent uncontroverted facts established by the parties in accordance with D.Kan. Rule 206(c) are as follows:

Plaintiff Juana Serda was enrolled at the Superior School of Hairstyling from January to June, 1992. Plaintiff alleges no harassing conduct on the part of defendant Eugene and Ruby Morrison, but rather bases her allegations on the conduct of defendant Joseph Hancock. Plaintiff contends that during the course of her enrollment she was subjected to continued unwanted and uninvited sexual comments, questions, phone calls, and threats by Hancock.

Plaintiff acknowledges that she never complained to the Morrisons of any alleged sexual harassment by defendant Hancock. In fact, the Morrisons had nothing to do with the day-to-day running of the school during plaintiff's employment there. The Morrisons were not aware of any of the activities allegedly perpetrated by defendant Hancock.

Hancock had sole decision-making authority over the day-to-day operations of Superior. He was not evaluated, critiqued, or overseen by the Morrisons.

On August 29, 1991, Hancock and the Morrisons entered into a contract for a purchase option on Superior School of Hairstyling. The agreed price was $100,000. Hancock then began working at Superior on September 3, 1991. On January 14, 1992, the aforementioned contract was rewritten and retitled "Lease with Purchase Option." The contract was also renegotiated to reflect lease payments totalling $75,000. It was Hancock's intention to purchase Superior from the Morrisons.

The Lease with Purchase Option includes a clause stating that the lessee (Hancock) assumes liability for any claim arising from the location, condition, or use of the business premises, and shall indemnify the lessors for any liability arising from the location, condition, or use of the business premises during the term of the lease. The contract identifies the Morrisons as the owners of the school, and provides that title to the business's assets remain with the owners until purchased by the lessee. Additionally, the agreement indicates that the Morrisons were to set up a bank account for funds received from federal student loan and grant programs from which Hancock could draw.

Kansas State Statutes and Administrative Regulations mandate that the owner of a cosmetology school obtain a license for the school from the State Board of Cosmetology, that the license must be renewed annually, and that such a license is not transferable. The licenses issued by the state to Superior School of Hairstyling for the period from July 1, 1991, through June 30, 1993 indicate that Eugene and Ruby Morrison are the owners of the school.[1]

The school is not incorporated, but was owned by the Morrisons as partners. The State Board of Cosmetology never received any written notification of a change in ownership or management of Superior. The Morrisons and Hancock did not formalize a bill of sale for Superior until April 12, 1993.

## III. DISCUSSION

In 1992, the Supreme Court recognized that the implied right of action under Title IX would support a claim for monetary damages based upon the sexual harassment of a student by a teacher. *Franklin v. Gwinnett County Public Schools,* —— U.S. ——, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). The Court held that, as in cases brought by employees under Title VII of the Civil Rights Act of 1964, when a teacher sexually harasses a student because of the student's sex, that teacher discriminates on the basis of sex. *Id.,* —— U.S. at ——, 112 S.Ct. at 1037 (citing *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986)).

▇ In the present case, the court is confronted with claims brought by a student at a vocational educational institution based upon the alleged sexual harassment of that student by the director of the school. In the motion for summary judgment filed by defendants Ruby and Eugene Morrison, the court is faced with the specific question of whether individuals who were in the process of selling the school to the alleged harasser have any liability under Title IX for the alleged acts of harassment.

As an initial matter, the court notes that the Morrisons are sued as "Ruby and Eugene Morrison d/b/a the Superior School of Hairstyling" and not for any individual acts they may have taken. An educational institution is a proper defendant under Title IX. *See* 20 U.S.C. § 1681(c); *Patricia H. v. Berkeley Unified School Dist.,* 830 F.Supp. 1288, 1291 (N.D.Cal.1993). Because the Superior School of Hairstyling is not a separately incorporated entity, its owners would thus be the proper defendants in this action. Construing any controverted facts in favor of the nonmoving party, therefore, the court must determine whether the Morrisons are owners of Superior School of Hairstyling.

---

1. Ruby Morrison has testified that she did not fill out or sign an application for renewal of the school license after August, 1991.

The uncontroverted facts established by the parties disclose that the license maintained for Superior was held in the name of the Morrisons during the entire time period when the alleged harassment of plaintiff Duron occurred. Additionally, the Lease with Purchase Option contract of January, 1992, identified the Morrisons as the owners of Superior. Although Ruby Morrison has testified at her deposition that she did not sign the applications for license renewal, this presents an issue of fact to be resolved by the factfinder at trial. The court concludes that there is a genuine issue of material fact as to the Morrisons' ownership in the Superior School of Hairstyling.

■ Assuming that the Morrisons continued to have an ownership interest in Superior while it was operated by defendant Hancock and during plaintiff's enrollment at the school, the issue for the court to decide then becomes: "When is a school liable for acts of sexual harassment by one of its employees under Title IX?" In *Mabry v. State Bd. of Community Colleges and Occupational Educ.*, 813 F.2d 311, 317 (10th Cir.), *cert. denied*, 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1987), the United States Court of Appeals for the Tenth Circuit held that courts should turn to the well-developed body of case law under Title VII if confronted with an employment-related allegation of sex discrimination under Title IX. "Because Title VII prohibits the identical conduct prohibited by Title IX, i.e., sex discrimination, we regard it as the most appropriated analogue when defining Title IX's substantive standards...." *Id.* at 316 n. 6.

In this case, however, the court is confronted with a situation involving harassment of a student rather than harassment of an employee of the school. This court has no direct guidance, either from the Tenth Circuit or the Supreme Court, on whether the substantive law of Title VII should be used by the court in a Title IX case brought by a student. In fact, at least one commentator has surmised that the Supreme Court's failure to address this issue in the *Franklin* case will "lead to great confusion in the lower courts." Joanne Liebman Matson, *Civil Rights—Sex Discrimination in Education—Compensatory Damages Available in a Title IX Sexual Harassment Claim*, 15 U.Ark. Little Rock L.J. 271 (1993).

The court has located two district court opinions from other jurisdictions where the courts have addressed the issue of liability under Title IX after the *Franklin* decision. *See Floyd v. Waiters*, 831 F.Supp. 867 (M.D.Ga.1993); *Patricia H. v. Berkeley Unified School Dist.*, 830 F.Supp. 1288 (N.D.Cal. 1993). In *Floyd*, the court determined that Title VII's agency principles should not provide a basis for liability on the part of a school due to the difference between Title VII and Title IX. 831 F.Supp. at 876. The court went on to hold that even if such agency principles did apply in Title IX cases, an institution would not be liable for acts outside the scope of an employee's employment. *Id.* The court finds the *Floyd* decision unpersuasive.

In *Patricia H.*, although the factual situation was different from the case at hand, the court did apply Title VII analysis to its Title IX claim. 830 F.Supp. at 1291. The court specifically noted that the Office of Civil Rights of the Department of Education, which is charged with enforcing compliance with Title IX, has repeatedly applied Title VII sexual harassment law when analyzing complaints against educational institutions. *Id.* at n. 3. Given this, and particularly in light of the Tenth Circuit's broad directive in *Mabry*, this court concludes that the substantive law of Title VII should be used to determine whether the Morrisons d/b/a Superior may be liable for the alleged acts of harassment by its director Hancock against student Serda.

■ In actions brought under Title VII, the well-defined law of the Tenth Circuit is that claims of hostile environment sexual harassment should be analyzed in accordance with agency principles.[2] *Hirschfeld*, 916

---

2. The court notes that the parties have focused primarily on plaintiff's claims of hostile environment harassment. Some courts have held that claims of *quid pro quo* sexual harassment by an

employee with direct supervisory authority over the harassee lead to direct liability on the part of the employer. *See e.g., Henson v. City of Dundee*, 682 F.2d 897, 909 (11th Cir.1982) (employer

F.2d at 576 (citing *Hicks v. Gates Rubber Co.,* 833 F.2d 1406 (10th Cir.1987)). In *Hicks* and *Hirschfeld,* the Tenth Circuit relied upon the provisions of Restatement (Second) of Agency § 219 to provide three alternative potential bases for employer liability for sexual harassment by an employee. These include:

> (1) Section 219(1) Acting within the scope of employment;
>
> (2) Section 219(2)(b) Employer Negligence or Recklessness; and;
>
> (3) § 219(2)(d) Authority or Agency Relationship Aiding Harasser.

*Hirschfeld,* 916 F.2d at 576 (citing *Hicks,* 833 F.2d at 1417–18).

The Tenth Circuit has noted that the first basis—acting within the scope of employment—will almost never provide a basis for employer liability because " '[s]exual harassment simply is not within the job description of any supervisor or any other worker in any reputable business.' " *Hicks,* 833 F.2d at 1417–18 (quoting Holzman & Trelz, *Recent Development in the Law of Sexual Harassment: Abusive Environment Claims after Meritor Savings Bank v. Vinson,* 31 St. Louis U.L.J. 239, 276 (1987)). In the present case, there is no allegation that Hancock's alleged harassment was within the scope of his duties as director of Superior. Defendants cannot be liable under section 219(1).

■ Under the second potential basis for liability, section 219(2)(b), employer negligence or recklessness may also provide a potential basis for liability. "Employer negligence in this context is defined as 'failing to remedy or prevent a hostile or offensive work environment of which management level employees knew, or in the exercise of reasonable care should have known.' " *Hirschfeld,* 916 F.2d at 577 (quoting *EEOC v.*

*Hacienda Hotel,* 881 F.2d 1504, 1516 (9th Cir.1989)). Here, it is uncontroverted that the Morrisons did not know of any acts of sexual harassment perpetrated by Hancock. Further, there is no allegation that the Morrison's should have, in the exercise of reasonable care, known of the alleged acts.[3]

■ Plaintiff contends that the school's potential liability lies in the third basis set out by the Tenth Circuit in *Hirschfeld:* authority or agency relationship aiding the harasser. Restatement (Second) of Agency § 219(2)(d) provides that a master may be liable for the acts of a servant acting outside the scope of delegated authority if the servant purported to act on behalf of the principal and there was reliance on that apparent authority, or, if the servant was aided in accomplishing the tort by the existence of the agency relationship. In this case, plaintiff contends that Hancock was aided in accomplishing his alleged torts against the plaintiff by the existence of an agency relationship with Superior and the Morrisons. Specifically, plaintiff contends that, absent the Morrisons' holding the cosmetology school license for Superior and enabling Hancock to access federal student aid funds, Hancock would not have been able to operate the school and students would not have enrolled in the school.

In *Hirschfeld,* the Tenth Circuit quoted the district court's opinion in that case, wherein the district court stated: "Section 219(2)(d) properly imputes an employee's actions to the employer whose delegation of authority empowered the agent to undertake them." *Id.* at 579. The district court noted that it would be too broad a reading of section 219(2)(d) for a court to hold that an employee was aided in accomplishing the tort in that he would not have been there but for

---

strictly liable for *quid pro quo* harassment by supervisors). However, in light of the Supreme Court's opinion in *Meritor Savings Bank,* 477 U.S. at 72, 106 S.Ct. at 2408 (agreeing with EEOC that Congress wanted courts to look to agency principles to determine employer liability in both types of cases), the court concludes that claims of *quid pro quo* harassment and hostile environment harassment should be treated the same so far as establishing liability on the part of the employer/institution.

**3.** The court notes that the alleged harasser, defendant Hancock, was himself a management level employee. That fact might be sufficient to create liability on the part of the school. However, in light of the court's conclusion regarding the third basis for liability discussed below, the court finds it unnecessary to decide this issue.

his job. *Id.* In the present case, unlike *Hirschfeld,* the court concludes that Hancock's relationship with Superior and the Morrisons goes beyond the mere existence of his job. The cosmetology licenses in the Morrisons' name enabled Hancock to operate the school. At the very least, there is a genuine issue of material fact as to the extent Hancock was aided in accomplishing the harassment of plaintiff by his relationship with the school and the Morrisons.

■ Moreover, the court notes that in many cases decided under Title VII, courts have held that an act of a supervisor with direct authority over the harassee makes an employer directly liable for any violations of Title VII. *See e.g., Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1558 (11th Cir.1987). This rule of direct liability is an alternative interpretation of the agency rules set forth in Restatement (Second) of Agency § 219(2)(d). *See id.* at 1559. In *Sparks,* the Court of Appeals for the Eleventh Circuit relied upon the conclusion of the Equal Employment Opportunity Commission that a supervisor acts as an "agent" of the employer for Title VII purposes " 'where [the] supervisor exercises the authority actually delegated to him by his employer, by making or threatening to make decisions affecting the employment status of his subordinates.' " *Id.* (quoting *Meritor Savings Bank,* 477 U.S. at 70, 106 S.Ct. at 2407). Citing the Supreme Court's opinion in *Meritor Savings Bank,* the Eleventh Circuit stated that the employer's liability is direct, and "the employer cannot find shelter in the claim that it neither had notice of, or approved of, the unlawful conduct." *Id.*

In the present case, Hancock had complete authority over the school and its students, presumably including authority over graduation, student financial aid, and grades. Therefore, this alternative "delegation of authority" interpretation of section 219(d)(2) could also provide a basis for liability on the part of the school, and the Morrisons as its owners.

Based on the foregoing analysis, the court concludes that there are genuine issues of material fact as to the Morrison's potential liability as owners of Superior School of Hairstyling for acts allegedly perpetrated by defendant Hancock on plaintiff Duron. Defendants' motion for summary judgment as to plaintiff's Title IX claim is denied.

■ Plaintiff has also alleged a state law claim for intentional infliction of emotional distress based upon the same harassing conduct of defendant Hancock. In their motion for summary judgment, the Morrisons contend that under Kansas agency law, no principal/agent relationship exists between these defendants as a matter of law. In the alternative, defendants contend that even if an agency relationship could be found, as principals they would only be liable for tortious acts of the agent which are outside the scope of the agent's authority if the acts were incidental to and in furtherance of the principal's business. *See Kline v. Multi–Media Cablevison, Inc.,* 233 Kan. 988, 989, 666 P.2d 711 (1983) (citing *Williams v. Community Drive–In Theater,* 214 Kan. 359, 520 P.2d 1296 (1974)).

In response, plaintiff argues that a question of fact exists as to the Morrisons' ownership of the school at the time of the alleged harassment. Plaintiff further contends that the Morrisons and Hancock acted as partners or joint venturers in the operation of the school, and as such, each is liable for the acts of the other. *See Stricklin v. Parsons Stockyards,* 192 Kan. 360, 363, 388 P.2d 824 (1964). For the same reasons discussed in the section of this memorandum and order concerning defendants' potential Title IX liability, the court concludes there are genuine issues of material fact as to the Morrisons' ownership of Superior, as well as their relationship with Hancock. Defendants' motion is denied as to plaintiff's pendent state law claim as well.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendants' Motion for Summary Judgment (Doc. 32) is denied.

**IT IS SO ORDERED.**