United States Court of Appeals,

Fifth Circuit.

No. 96-50056.

Jean DOE, as Guardian and Next Friend of Jane Doe;  Jane Doe, Plaintiffs-Appellants,

v.

LAGO VISTA INDEPENDENT SCHOOL DISTRICT, Defendant-Appellee.

Feb. 24, 1997.

Appeal from the United States District Court for the Western District of Texas.

Before KING and HIGGINBOTHAM, Circuit Judges, and LAKE,[*] District Judge.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This case presents the question of when a school district is liable under Title IX for a teacher's sexual harassment of a student.  We recently addressed this question in a pair of Title IX cases, *Rosa H. v. San Elizario Indep. School Dist.,* --- F.3d ----, No. 95-50811 (5th Cir.1997), and *Canutillo Indep. School Dist. v. Leija,* 101 F.3d 393 (5th Cir.1996).  Based on those cases, we affirm summary judgment in favor of the school district.

I.

Frank Waldrop, a teacher at Lago Vista High School, first met Jane Doe while she was a student in his wife's eighth-grade honors class during the 1990-91 school year.  At that time, she was thirteen.  Because Doe needed a more challenging academic program, Waldrop's wife referred her to her husband's high school discussion group, which Doe participated in for several weeks.  When Doe became a ninth-grader, she was assigned to Waldrop's class in advanced social studies.  Their relationship grew during the academic year.  Waldrop went out of his way to flatter Doe and spend time alone with her, and Doe enjoyed receiving attention from her instructor.

Waldrop initiated sexual contact with her at her home in the spring of 1992.  Knowing she would be alone, he visited under the pretext of returning a book and proceeded to fondle her breasts and unzip her pants.  During the summer, Waldrop had sex on a regular basis with Doe, who was by

[*] District Judge of the Southern District of Texas, sitting by designation.

then fifteen years old. None of the encounters took place on school property. The relationship ended in January of 1993, when a Lago Vista police officer happened to discover Waldrop and Doe having sex.

Doe agrees with the school district that "there was no direct evidence that any school official was aware of Waldrop's sexual exploitation of Jane Doe" until January of 1993. The parents and guardian of two other students complained to Michael Riggs, the high school principal, that Waldrop had made inappropriate remarks in the presence of female students. Riggs organized an investigation into this complaint, Waldrop denied the charges, and Riggs did not bring the matter to the attention of Virginia Collier, the district superintendent.

The plaintiff sued the school district for negligence and for violations of § 1983 and Title IX. The plaintiff concedes that her negligence action cannot succeed under Texas law. Judge Sparks granted summary judgment to the school district on both statutory claims. Doe appeals only the summary judgment on her Title IX claim.

II.

Doe's Title IX cause of action has its origin in *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). But while *Franklin* made it possible for private litigants to use Title IX to recover money damages when teachers sexually abuse students, it did not set out the standard for assessing a school district's liability. The school district insists that Doe cannot recover unless we are willing to hold educational institutions strictly liable for teachers' misconduct. Doe, on the other hand, claims that summary judgment was inappropriate because school districts can be liable on agency principles when a teacher uses his position of authority to abuse students sexually.

We have recently rejected the notion that Title IX creates strict liability in teacher-student sexual harassment cases. In *Canutillo Indep. School Dist. v. Leija,* 101 F.3d 393 (5th Cir.1996), we reversed a district court's denial of summary judgment where a teacher molested a second-grade student during movies on school grounds and another teacher had notice of the harassment. A school district is not absolutely liable because, "[s]imply put, strict liability is not part of the Title IX

contract." 101 F.3d at 399. To recover, Doe must be able to articulate a theory that is less expansive than strict liability.

One possibility is a theory based on constructive notice. Under this theory, Title IX plaintiffs, like Title VII plaintiffs, can prevail by showing that management-level authorities should have known of the misconduct and failed to take steps to end it. *See Waltman v. Int'l Paper Co.,* 875 F.2d 468, 478 (5th Cir.1989). In *Leija,* we held that the teacher's abusive conduct was not so pervasive that a reasonable juror could find constructive notice, in spite of the fact that a student and her mother reported the abuse to a teacher. *Leija,* 101 F.3d at 402. Doe does not pursue the constructive-notice theory because, as in *Leija,* there is not enough evidence for a jury to conclude that a Lago Vista school official should have known about the abuse. Doe did not present any evidence that any Lago Vista employee other than Waldrop knew of the relationship. School officials knew of complaints about Waldrop's tendency to make inappropriate remarks to students, but those complaints did not concern Doe and gave officials no reason to think that Waldrop would have sex with a student.

Instead of strict liability or constructive notice, Doe's theory of recovery relies on the common-law rule that an employer is vicariously liable for the tort of an employee, even if that tort was outside of the scope of employment, if the employee "was aided in accomplishing the tort by the existence of the agency relationship." *Restatement (Second) of Agency* § 219(2)(d) (1958). According to Doe, Waldrop's status as a Lago Vista instructor made his abuse possible: he used his authoritative position to take advantage of an adolescent student who wanted to please her teachers and fit in socially. The court in *Hastings v. Hancock,* 842 F.Supp. 1315, 1319-20 (D.Kan.1993), used this theory to deny summary judgment to a plaintiff who sued the owners of a hairstyling school under Title IX for the harassing conduct of the operator of the school. The court noted, however, that it was dealing with an unusual case because the owners had given the harasser complete authority to run the school as he wished. It acknowledged that "it would be too broad a reading of section 219(2)(d) for a court to hold that an employee was aided in accomplishing the tort in that he would not have been there but for his job." *Id.* (citing *Hirschfeld v. New Mexico Corrections Dept.,* 916 F.2d 572, 579 (10th Cir.1990)).

We rejected this agency theory in *Rosa H. v. San Elizario Indep. School Dist.,* --- F.3d ----, ----, No. 95-50811 (5th Cir.1997). Under *Rosa H.,* school districts are not liable in tort for teacher-student harassment under Title IX unless an employee who has been invested by the school board with supervisory power over the offending employee actually knew of the abuse, had the power to end the abuse, and failed to do so. Although that case went to a jury on a negligence theory drawn from § 219(2)(b) rather than § 219(2)(d), we noted that a common-law agency theory would permit courts to use § 219(2)(d) and that that section would generate vicarious liability in virtually every case of teacher-student harassment. *Rosa H.,* --- F.3d at ----. We follow *Rosa H.* and refuse to allow plaintiffs to use Title IX, which was enacted under the Spending Clause, to bring tort suits based on the mere fact that a teacher's employment status aided in the commission of sexual harassment.

## III.

Because Doe cannot maintain a private cause of action under Title IX based on strict liability, constructive notice, or the common law of agency, we AFFIRM the district court's summary judgment in favor of Lago Vista Independent School District.