730 So.2d 119 (1998)
Robin HENRY
v.
GEORGIA-PACIFIC CORPORATION and Johnny Hurst.
1970867.
Supreme Court of Alabama.
December 18, 1998.
Rehearing Denied March 12, 1999.
W. Lee Pittman and Robert Potter of Pittman, Hooks, Dutton & Hollis, P.C., Birmingham, for appellant.
Ralph D. Gaines, Jr., of Gaines, Gaines & Rasco, P.C., Talladega; and Jeffrey A. Walker of Butler, Snow, O'Mara, Stevens & Cannada, P.L.L.C., Jackson, MS, for appellees.
KENNEDY, Justice.
The plaintiff, Robin Henry, appeals from a summary judgment in favor of the defendants Georgia-Pacific Corporation and Johnny Hurst. The trial court made that summary judgment final pursuant to Rule 54(b), Ala. R. Civ. P.
In order to enter a summary judgment, the trial court must determine that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala. R.Civ.P. In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. Travis v. Scott, 667 So.2d 674 (Ala.1995).
Viewed most favorably toward the plaintiff, the evidence suggests the following: Robin Henry was employed by Georgia-Pacific. Georgia-Pacific had a contract with Zwiebel & Associates, Ltd. ("Zwiebel"), a management and consulting firm. Zwiebel was in charge of conducting employee training for Georgia-Pacific. Zwiebel hired Dr. Charles Ted Deeble. Dr. Deeble conducted some of the training and was in charge of one-on-one counseling sessions with the employees. The counseling sessions were to be business-related, according to Zwiebel; however, its president acknowledged that it never specifically told Dr. Deeble to limit the one-on-one sessions to business-related matters. (C.R. 522-23.)
According to Dr. Deeble, one of the rules for the one-on-one sessions was that the employee would select the topics for discussion. (C.R.543-44.) Georgia-Pacific never placed any restrictions on the subjects that could be discussed in the individual sessions. (C.R. 550.) Perry Nelson, the plant manager for *120 Georgia-Pacific, told Mrs. Henry that she was to meet with Dr. Deeble. (C.R.548-49, 557.) Nelson placed no restrictions on the topics that could be discussed at the sessions. (C.R.559.)
Dr. Deeble had helped some of the other employees quit smoking. (C.R.312, 317.) Mrs. Henry asked Dr. Deeble to help her quit smoking and to help her learn to relax. Another employee had told Mrs. Henry that Dr. Deeble used hypnosis to help stop smoking. (C.R.665.) At her first session with Dr. Deeble, Mrs. Henry had a positive experience with hypnosis and practiced self-hypnosis techniques.
Dr. Deeble admitted that, during a later session, he asked Mrs. Henry if she was able to achieve an orgasm with her husband. (C.R.569.) While he hypnotized Mrs. Henry, Dr. Deeble told Mrs. Henry that she was "getting horny." (C.R.335.) Dr. Deeble acknowledged that, during one session, Mrs. Henry reported that she had an orgasm-like experience during the hypnosis. (C.R.548-49.) Dr. Deeble said he was unsure whether he told Mrs. Henry that he was "getting horny." (C.R.551-52.) He admitted that he told Mrs. Henry how to experience an orgasm by imagining sexual intercourse with her husband and how to "become more responsive overall in a sexual manner." (C.R. 553-54, 220-21.) Dr. Deeble said that he may have told Mrs. Henry that he had helped other employees with sexual problems. (C.R.560-61.)
Mrs. Henry testified that she understood the purpose of the sessions to be to help the employees have a better attitude. (C.R.631.) She said her supervisors told her that "everybody would be involved and [that] we needed to cooperate fully." (C.R.632.) Plant manager Nelson stated to Mrs. Henry, "[Y]ou will cooperate or you don't have a job." (C.R.633.)
Mrs. Henry told Johnny Hurst, a supervisor, about Dr. Deeble's questioning her about orgasms, seeking his help in the matter. (C.R.649, 658, 660, 672-74.) Mrs. Henry then tape-recorded her next session with Dr. Deeble. She played the tape for Hurst so that he could listen to Dr. Deeble asking her to take off her shirt. (C.R.659.) Randy Youngblood, an assistant plant superintendent, came in and told Mrs. Henry that Dr. Deeble was "sweet on [her]." (C.R.650-53.) Youngblood told Mrs. Henry that she had to continue with the sessions or else lose her job. (C.R.661, 663, 666-67.)
Mrs. Henry stated in her deposition that she did not want to continue with the individual sessions but that she feared losing her job if she refused to see Dr. Deeble or refused to cooperate with him during the sessions. (C.R.654-55.) Johnny Hurst advised Mrs. Henry to say nothing about the one-on-one sessions if she wanted to keep her job. (C.R.662-63.) Mrs. Henry continued with the sessions until Dr. Deeble stopped coming to the plant.
Mrs. Henry sued Georgia-Pacific, Zwiebel, Dr. Deeble, and Johnny Hurst. In her complaint, Mrs. Henry sought to hold Georgia-Pacific vicariously liable for Dr. Deeble's acts. She also alleged a direct cause of action, based on the tort of outrage, against Georgia-Pacific and Johnny Hurst for requiring her to see Dr. Deeble. (C.R.19-20.) Georgia-Pacific and Johnny Hurst filed a joint motion for summary judgment. Mrs. Henry abandoned her vicarious-liability claim against Georgia-Pacific and Johnny Hurst and argued that their legal accountability arose out of insisting that she continue meeting with Dr. Deeble after she had reported what had occurred during the sessions.
The trial court entered a summary judgment for Georgia-Pacific and Johnny Hurst, based on Hendley v. Springhill Memorial Hospital, 575 So.2d 547 (Ala.1990). The claims against Zwiebel and Dr. Deeble are still pending in the trial court.
In Hendley, we affirmed a summary judgment in favor of a hospital in a situation where an independent contractor of the hospital had performed an unnecessary vaginal examination. In Hendley, the hospital did not know of the independent contractor's actions. However, in this present case, the evidence indicates that Georgia-Pacific was told of Dr. Deeble's alleged improper sexual conduct and demanded that Mrs. Henry continue with the sessions or else lose her job.
*121 Egregious sexual harassment can amount to the tort of outrage. Busby v. Truswal Systems Corp., 551 So.2d 322 (Ala. 1989). In Busby, a supervisor repeatedly subjected the plaintiffs to sexually harassing comments. The plaintiffs told management in general terms of the harassment, but did not initially give the details or the full extent of that conduct, and the plaintiffs did not give management time to correct the situation. This Court held that the company was not liable on the claim of outrage, based on those facts. Unlike the plaintiffs in Busby, Mrs. Henry notified a supervisor of the specific comments made by Dr. Deeble and even let him listen to a tape-recording of the comments.
Viewing the facts in the light most favorable to Mrs. Henry, as we are required to do, we conclude that the summary judgment must be reversed. A jury could reasonably determine that Georgia-Pacific and Johnny Hurst's conduct was outrageous that Johnny Hurst, working as a supervisor, was told exactly what had occurred during the sessions; that Georgia-Pacific, with prior knowledge, required Mrs. Henry to continue counselling sessions at which improper sexual conduct was occurring; and that they made Mrs. Henry's job dependent upon her attending those sessions.[1]
REVERSED AND REMANDED.
HOOPER, C.J., and ALMON, SHORES, COOK, and LYONS, JJ., concur.
MADDOX, J., dissents.
HOUSTON, J., recuses himself.
MADDOX, Justice (dissenting).
Because I believe the facts of this case fall within the purview of this Court's decision in Busby v. Truswal Systems Corp., 551 So.2d 322 (Ala.1989), and specifically because I do not believe Ms. Henry presented substantial evidence indicating that Georgia-Pacific had sufficient knowledge of Dr. Deeble's actions to satisfy the elements of the tort of outrage, I dissent.
Although the majority has outlined most of the relevant facts of this case, I wish to discuss some of them in more detail. The evidence indicates that the lurid session with Dr. Deeble occurred on April 7, 1992. Afterwards, Ms. Henry spoke with supervisors Johnny Hurst and Randy Youngblood about the incident. Ms. Henry considered Hurst a friend and spoke with him often about personal topics. Also, Ms. Henry stated in her deposition testimony that when she discussed the incident with Hurst she thought it was understood that the conversation was confidential. As for Youngblood, Ms. Henry testified that she may have told him to keep the conversation confidential. After the April 7 incident, Ms. Henry attended sessions with Dr. Deeble approximately three more times. Ms. Henry did not attend any sessions with Dr. Deeble after May 1992. In May 1993, Ms. Henry contacted an acquaintance at the Atlanta, Georgia, headquarters of Georgia-Pacific and related the incident to him. Approximately one week after that call, Ms. Henry was interviewed by a member of Georgia-Pacific's human resources staff. Soon thereafter, she was informed by Georgia-Pacific that Dr. Deeble had been taken out of the program.
In Busby v. Truswal Systems Corp., 551 So.2d 322 (Ala.1989), this Court dealt with issues and facts very similar to those presented here. In Busby, some female employees brought an action against Truswal Systems Corporation, their employer, alleging invasion of privacy and the tort of outrage. *122 Their outrage claim centered on accusations that one of their supervisors, Deaton, had "repeatedly subjected them to sexual harassment." Id. at 323. The employees related their accusations to Fairley, a supervisor. Id. at 323. One of the employees, Pitts, was a personal friend of Fairley. Id. at 326, n. 1. Fairley's testimony contradicted much of Pitts's testimony. Id. at 327. The trial court entered a summary judgment in favor of Truswal, and this Court affirmed, stating
"There is no evidence ... that the plaintiffs imparted sufficient information to Fairley for Truswal to be held liable for the tort of outrage. The materials submitted on the summary judgment motion show only that the plaintiffs made generalized complaints to Fairley."
Id. at 327. This Court further stated that in order to establish outrageous conduct by a corporate defendant, it must be shown that the conduct "was perpetrated as a means to further the defendant corporation's business," or that a jury could conclude that "`this is the way the company does business.'" Id. at 327. This Court concluded that "Deaton's conduct was aimed purely at satisfying his own lustful desires; no corporate purpose could conceivably be served by his overtures," and that, based on these facts, Truswal could not be "held liable as having ratified Deaton's alleged outrageous conduct." Id. at 328.
This case, like Busby, should turn on the kind of knowledge the corporate defendant had. This Court's recent decision in H.M. v. Jefferson County Board of Education, 719 So.2d 793 (Ala.1998), discusses the principle of vicarious and respondeat-superior liability in a sexual-harassment context and discusses the circumstances under which an employer can be held liable for the acts of its agent.
In H.M., this Court dealt with a claim by parents, on behalf of their minor child, alleging same-sex sexual harassment by one of their child's teachers. In affirming a summary judgment in favor of the Jefferson County Board of Education, we stated:
"[U]ntil the plaintiffs' son reported the harassment no Board official with supervisory authority knew of [the] alleged sexual harassment and ... once the Board learned of the misconduct, it took prompt action to correct it and to prevent it from occurring in the future."
719 So.2d at 796.
It is undisputed that Ms. Henry imparted specific information to two supervisors, one of whom, as in Busby, was a personal friend. However, this case contains the additional fact that Ms. Henry expressly or impliedly suggested that her conversations with these supervisors should remain confidential. While those supervisors could be accused of bad judgment in not presenting the matter to officials of the company, their inaction, considered in light of Ms. Henry's desire to keep the incident confidential, does not establish the tort of outrage. It appears to me, given these facts, that Georgia-Pacific's conduct should not be construed as ratification of Dr. Deeble's actions or construed as suggesting that the corporation carried on its business in disregard of the welfare of its employees. On the contrary, it appears that when its corporate headquarters was notified, Georgia-Pacific took quick action to remedy the situation.
In Busby, we also noted:
"The tort of outrage provides a remedy for `extreme and outrageous conduct,' and so should not be the basis for vicarious or respondeat-superior liability except in the most compelling circumstances."
551 So.2d at 327. While I agree that Dr. Deeble's alleged conduct was deplorable,[2] I cannot agree, based on the evidence presented in this case, that Georgia-Pacific could be said to have had the kind of knowledge required to make it vicariously liable for Dr. Deeble's alleged outrageous conduct. I believe Ms. Henry has failed to present substantial evidence establishing a genuine issue of material fact in that regard. Consequently, I respectfully dissent.
NOTES
[1] Justice Maddox urges in his dissent that Georgia-Pacific should be insulated from liability by reason of Henry's understanding that her communications to her supervisors at Georgia-Pacific were confidential. However, the record reflects that, as to whether Hurst was to keep those communications private and confidential, Henry testified, "I don't know that it was my understanding." As for her communications to Youngblood, Henry said she "may have" told him to keep the conversations confidential. Moreover, even if Hurst and Youngblood, in support of Georgia-Pacific's motion for summary judgment, had offered evidence indicating that they had not communicated any information concerning their discussions with Henry and that their failure to do so was based on the understanding of confidentiality, the credibility of that evidence would be an issue for the jury. Under these circumstances, a jury question exists as to the knowledge of Georgia-Pacific.
[2] As the majority opinion indicates, Ms. Henry sued Dr. Deeble in this same action and her claim against him, based on the same alleged conduct we have considered in this appeal, is pending in the circuit court.